ROBERT J. ROMERO (SBN 136539)
EDWARD F. DONOHUE (SBN 112730)
CRISTINA L. PIECHOCKI (SBN 291860)
HINSHAW & CULBERTSON LLP
One California Street, 18th Floor
San Francisco, CA 94111
Telephone: 415-362-6000
Facsimile: 415-834-9070

Attorneys for Plaintiff
KINSALE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINSALE INSURANCE COMPANY, an Arkansas corporation,<br><br>   Plaintiff,<br><br>   vs.<br><br>SKY HIGH SPORTS LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS CONCORD LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS NASHVILLE LLC, a Nevada and Tennessee Limited Liability Company, SKY HIGH SPORTS ONTARIO LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS OPPORTUNITIES LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS ORANGE COUNTY LLC, a California and Nevada Limited liability Company, SKY HIGH SPORTS SACRAMENTO LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS SANTA CLARA LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS SEATTLE LLC, a Nevada and Washington Limited Liability Company, and DOES 1-20 inclusive,<br><br>   Defendants. | Case No. 2:14-cv-02086 GEB DAD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF THE ISSUES BY PLAINTIFF KINSALE INSURANCE COMPANY** |

1

I.      INTRODUCTION

In this insurance declaratory relief action, plaintiff Kinsale Insurance Company ("Kinsale") asserts that Sky High Sports LLC, Sky High Sports Concord LLC, Sky High Sports Nashville LLC, Sky High Sports Ontario LLC, Sky High Sports Opportunities LLC, Sky High Sports Orange County LLC, Sky High Sports Sacramento LLC, Sky High Sports Santa Clara LLC, and Sky High Sports Seattle LLC (collectively, "Sky High") breached the audit provisions of the commercial general liability policies issued by Kinsale to Sky High. Specifically, Sky High has failed to provide Kinsale's auditors the necessary access to original financial records needed to calculate final premium as stipulated in each of the policies issued to Sky High (the "Sky High Policies").

By this motion, Kinsale seeks summary judgment, or in the alternative, summary adjudication, on its claims for Declaratory Relief And Breach of Contract and for a judicial declaration and that, as a matter of law: 1) that the defendants have breached the policies by failing to provide original books and records for inspection pursuant to the premium audit provisions of the Sky High Policies; and, 2) order that defendants comply with the Sky High Policies and provide original books and records for inspection pursuant to premium audit provisions of said policies.

II.     SUMMARY JUDGMENT STANDARD AND STANDARD OF REVIEW

A motion for summary judgment, or summary abjudication, shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1484 (9th Cir. 1994). The sole question presented to the court in Kinsale's complaint involves the interpretation of the terms of the Kinsale policies. Interpretation of

insurance policies presents a question of law which may be decided by this court. *Maryland Casualty Co. v. Nationwide Ins. Co.*, 65 Cal.App.4th 21, 29 (1998). Construction of an insurance policy is governed by state law and subject to the interpretation principles established under the California Civil Code and California case law. *Humboldt Bank v. Gulf Ins. Co.*, 323 F.Supp.2d 1027, 1032 (N.D. Cal. 2004).

## III.   FACTS

Kinsale insured Sky High through September 2013 pursuant to five insurance policies. (UMF 1) Under the terms of each insurance policy, Kinsale was contractually entitled to perform an audit of Sky High's books and records to assess the correct final premium for the insurance coverage provided. (UMF 2) Kinsale retained a professional insurance audit firm, Overland Solutions, Inc. ("Overland") to perform the audits mandated by the Sky High Policies. (UMF 3) Thus, in each case, the Sky High Policies provide a right to "examine your books and records." (UMF 4)

Direct access to such original records is essential under the premium calculation provisions of said policies, which is self-evident given the many accounting items that go into the formula. (UMF 5) The "Basis of Premium" Endorsement No. ADF4002 0110 (the "Basis of Premium Endorsement") provides a formula for calculating "Gross Sales" as defined in that endorsement and specified in the "Classification and Premium" Section of the declaration pages of each policy. (UMF 6)  Final premium due under each policy is derived by multiplying a rate into said Gross Sales figure. (UMF 7)  As is outlined below, the process of calculating the "Gross Sales," from which final premium is derived, requires a detailed analysis of four alternate items potentially compromising revenue coupled with twelve "inclusions" and "exclusions" needed to arrive at correct figures for each of the five insured entities.   (UMF 8)

However, to date, Sky High has failed to comply with Kinsale's numerous

3

requests for complete and full access to the source financial records needed to conduct and complete the premium audits. (UMF 9)  In each case the Overland auditor requested direct access to the general ledgers and other source records of Sky High for the annual audit needed to calculate final premium and also verify that individual revenue entries were accurate. (UMF 10)  The general financial statements provided by Sky High were mere summaries with gross figures which did not delineate the line-by-line entries from which said totals were derived. (UMF 11)

As such, they were wholly inadequate to calculate the "Gross Sales" of the respective policies, and to verify the accuracy of the amount and characterization of individual revenue entries of general ledgers and similar source accounting records.  (UMF 12)  Without this information the final earned premium in accordance with the Classification and Premium provisions of the five respective policies could not be calculated. (UMF 13)

In no case was the complete documentation provided as requested by Overland to allow Overland to successfully complete the audits.  (UMF 14) In the course of attempted on site visits and other efforts to obtain complete documentation between July 2012 and July 2014, Sky High did not provide access to ordinary general ledgers or source records (electronic or otherwise).  (UMF 15) Instead, Sky High repeatedly provided secondary records primarily consisting of Profit and Loss Statements, with revenue summaries presumably based on general ledgers and other source records that were never provided to Overland. (UMF 16)

In addition to Kinsale's unsuccessful attempts, summarized above, to obtain the necessary financial information to complete the audits pursuant to the five insurance policies, Kinsale also engaged assistance of counsel. (UMF 17)  Demand letters were sent on Kinsale's behalf seeking compliance with the audit obligations. (UMF 18) However, Sky High was unmoved in its refusal to provide Kinsale with the original books and records needed to complete the audits. (UMF 19).

As a result of the inability of Overland to obtain general ledgers and other source books and records documenting revenue, none of the five premium audits were completed. (UMF 20) This action was instituted to seek redress for this blatant breach of contract in the form of specific performance and ultimately damages equal to the amount the original records will establish that Defendants owe.

## IV. THE KINSALE INSURANCE POLICIES

Kinsale Insurance Company issued five commercial general liability insurance contracts to the defendants, each for an annual period (collectively, the "Sky High Policies" or "the Policies"). The policy periods' numbers and policy terms of the insurance contracts are as follows:

| | |
|---|---|
| September 21, 2011-September 21, 2012 | Commercial General Liability- Claims Made Policy No.0100003284-0 issued to named insureds Sky High Sports LLC, Sky High Sports Santa Clara LLC, Sky High Sports Sacramento LLC, Sky High Sports Seattle LLC, Sky High Sports Concord LLC, Sky High Sports Orange County LLC, and Sky High Sports Opportunities LLC |
| November 2, 2011 to November 2, 2012 | Commercial General Liability Policy No. 0100003681-0 issued to Sky High Sports Ontario LLC |
| December 30, 2011- December 30, 2012 | Commercial General Liability Policy No. 0100004175-0 issued to Sky High Sports Nashville LLC |
| September 21, 2012- September 21, 2013 | Commercial General Liability- Claims Made Policy No. 0100007494-0 issued to Sky High Sports Seattle, LLC |
| September 21, 2012-September 21, 2013 | Commercial Genera Liability- Claims Made Policy No. 0100003284-1 issued to Sky High Sports LLC with the following |

5

named insureds: Sky High Sports LLC, Sky High Sports Santa Clara LLC, Sky High Sports Sacramento LLC, Sky High Sports Orange County LLC, and Sky High Sports Concord LLC

### A.   Premium Audit Provisions

Under the terms of each insurance contract, Kinsale is entitled to perform an audit of Sky High Sports' finances to assess, among other things, the correct premium for the insurance protection offered to Sky High Sports. Each of the Kinsale insurance contracts at issue in this complaint includes the following essential terms, among others:

**PREMIUM AUDIT**

**1.**   We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**2.**   Premium shown in this Coverage Part as advance premium is a deposit premium only.  At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured.  The due date for audit and retrospective premiums is the date shown as the due date on the bill.  If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**3.**   The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

(Samuel Decl. ¶3, Exhs. A-E, Commercial General Liability Coverage Form, CG 00 02 10 01, p. 11 of 16, Section 5)

**EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period up to three years afterward.

(Samuel Decl. ¶3, Exhs. A-E, "Common Conditions—Casualty," Endorsement CAS2007 0110, p. 2 of 3)

### B.   Minimum Policy Premium Endorsement

Each of the Kinsale insurance policies at issue in this complaint includes a Minimum Policy Premium Endorsement that states in part:

> This endorsement modifies insurance provided under the following:
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE**
>
> **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**
>
> **SCHEDULE**
>
> | A. | Minimum and Deposit Premium | 100% |
> |---|---|---|
> | B. | Percentage of Minimum Premium retained | 25% |
>
> This endorsement sets forth the minimum earned premium for this policy. The minimum earned premium for this policy is calculated as follows:
>
> 1. The minimum and deposit premium for this policy is shown in item A. of the Schedule above and is a percentage of the total policy premium shown on the Declarations page of the policy plus any premium adjustments by endorsements and any additional premium developed by audit.
>
> 4. If the insured cancels this policy and the policy **is** subject to audit, the earned premium will be determined by final audit however in no event will it be less than the percentage that is shown in item B. of the Schedule above of the minimum and deposit premium described in paragraph 1. above.

(Samuel Decl. ¶3, Exhs. A-E, "Minimum Policy Premium," Endorsement CAS4018 0411, p. 1 of 1)

**C.  Basis of Premium Endorsement**

Each of the Kinsale insurance contracts at issue includes a Basis of Premium Endorsement that states in part:

7

The basis used for determining the premium charge for each classification is indicated in the Classification and Premium section of the Declarations.

(Samuel Decl. ¶3, Exhs. A-E, "Basis of Premium," Endorsement ADF4002 0110, p. 1 of 5)

The defendants' Kinsale premiums are applied per $1,000 of Gross Sales. The Kinsale policies describe the Gross Sales basis of premium as follows:

> F.   Gross Sales
>
>      1.   Definition
>
>      The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:
>
>      a.   All goods or products, sold or distributed;
>      b.   Operations performed during the policy period;
>      c.   Rentals; and
>      d.   Dues of fees.
>
>      2.   Inclusions
>
>      The following items shall not be deducted from gross sales:
>
>      a.   Foreign exchange discounts;
>      b.   Freight allowance to customers;
>      c.   Total sales of consigned goods and warehouse receipts;
>      d.   Trade of cash discounts;
>      e.   Bad debts; and
>      f.   Repossession of items sold on installments (amount actually collected).
>
>      3.   Exclusions
>
>      The following items shall be deducted from gross sales:
>
>      a.   Sales or excise taxes which are collected and submitted to a governmental division;
>      b.   Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;
>      c.   Finance charges for items sold on installments;
>      d.   Freight charges on sales if freight is charged as a separate item on customers invoice;
>      e.   Royalty income from patent rights or copyrights which are not product sales, and
>      f.   Rental receipts for products liability coverage only.
>
>      4.   Application

8

KINSALE'S MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION – Case No. 2:14-CV-02086 GEB DAD

The rates apply per $1,000 of Gross Sales.

(Samuel Decl. ¶3, Exhs. A-E, "Basis of Premium," Endorsement ADF4002 0110, p. 2 of 5)

## V. ARGUMENT

Summary judgment is appropriate here because there is no genuine dispute that Sky High breached its contractual obligation to provide the financial records needed to complete the audits. Accordingly, Kinsale is entitled to a binding order that it has the contractual right to the necessary source books and records from which final premium can be determined, that said contract has been breached and that Sky High specifically perform its audit obligations by a date certain.

### A. A Contract Between The Parties Existed

Under California law, a valid contract is established by four elements: parties capable of contracting, their consent, a lawful object and sufficient consideration. Cal. Civ. Code § 1550. Sky High has not contended that any of these elements is lacking in this case and the undisputed evidence is in accord. As a result, this Motion is narrowly focused on the rights and obligations of the parties under the policies and, in particular, Kinsale's right to complete premium audits based on the detailed original books and records needed to determine the final premiums owed.

### B. Under California Law, Insurance Contracts Are Interpreted According To Their Plain Wording And According to The Reasonable Expectations Of The Parties

The first function of the court in interpreting an insurance policy is to determine of the plain meaning of the contract. *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 818 (1990), 821-22; *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1265 (Cal. 1992); Cal. Civ. Code §§ 1644, 1638. The contract must be given the meaning that best effects the mutual intention of the parties, which is to be

9

KINSALE'S MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION – Case No. 2:14-CV-02086 GEB DAD

inferred, if possible, solely from the contract wording. *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 18 (Cal. 1995), Cal. Civ. Code §§1636, 1639.

First, provisions providing for retroactive calculations of premiums are common in commercial insurance policies and enforced as written. *Couch on Insurance* §§ 69:16 (2014) Calculating premium after a defined period of time is known as retrospective rating. *Id.*

> The most common use of retrospective rating is in fields where neither the insurer nor the insured has any realistic basis for assessing risks at the beginning of the policy period. These fields include business liability and workers' compensation, where the nature of the insured entity's activities and the exact compensation of its work force are subject to rather wide variation; commercial property insurance covering business inventory which waxes and wanes over the course of the policy term; maritime shipping in which the amount of cargo and number of voyages may fluctuate widely; and similar activities. In these circumstances, the insurer usually inserts a provision calling for an "audit" or "inspection" during or after the policy period, and applies standard rates to the risk that was actually undertaken.

*Id.* at N. 7 *citing Travelers Indem. Co. v. Worley*, 168 S.E.2d 168 (Ga. 1969); *London Guarantee & Acc. Co. v. Jacobson*, 135 N.E. 122 (Mass. 1922); *Great American Ins. Co. v. Nova-Frost, Inc.*, 362 N.W.2d 358 (Minn. Ct. App. 1985). Use of gross sales as the mechanism to measure business activity and calculate premium retroactively is one of the recognized methods of calculating premiums. *E.g., Sheriff v. Moore*, 125 S.E.2d 729, 729-30 (Ga. 1962) As recognized in *Sheriff*, such an audit is conducted by providing an auditor direct access to the insured's books and records. *Id.* at 730. *See also, Travelers Indemnity Co. v. International Nutrition, Inc.*, 734 N.W.2d 719, 726-27 (Neb. 2007) (Audit provisions found enforceable and unambiguous).

Further, the rationale for obtaining direct access to books and records is self-explanatory. The definition of "Gross Sales" is both fact intensive and as noted has a number of "inclusions" and "exclusions" which must be ferretted out from

10

KINSALE'S MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION – Case No. 2:14-CV-02086 GEB DAD

any general "gross" figures set forth on a global financial statement.[1]  Thus, an insured's inability to produce source records or potential exclusions is generally fatal to arguments that premium should be reduced.  *E.g., U.S. Fire Ins. Co. v. Commodore Mfg. Corp.*, 108 A.D. 2d 621, 621-22 (1985) (Insured failed to produce invoices allegedly supporting exclusions).

Second, examination of books and records provisions have been consistently enforced as drafted over efforts by insureds to withhold and/or provide secondary financial information.  *Tran v. State Farm Fire and Cas. Ins. Co.*, 961 P.2d 358, 363-65 (1998) (Failure to produce complete financial records deemed breach of similar provisions); *Purze v. American Alliance Ins. Co.*, 781 F.Supp. 1289, 1290-91 (N.D. Ill. 1991) (Failure to produce complete financial records deemed breach of similar provisions).  As such, the failure to comply with this provision is a clear breach of the policy.  In theory, Kinsale could stand on this breach of the cooperation clause and seek repayment of all claims expense previously paid based on the repudiation of these fundamental contract rights.  Instead, without waiving such rights, Kinsale is simply attempting to "get it right" and calculate the correct final premium.

Here, the policy expressly states that the initial premium is only a "deposit premium."  As also noted, the policy contains provisions under which Kinsale is given authority to conduct direct inspections of books and records to determine the correct premium to be charged. As quoted above, the Common Conditions Endorsement states that "[w]e may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward." The insurance contracts clearly and unambiguously give Kinsale the right to examine Sky High's original books and records as necessary to complete

---

[1] Thus, there are a total of six inclusions and six exclusions, underscoring the need to "drill down" into "gross" figures at least twelve times over.

11

1 the premium audits.

2 Additionally, in Gaylord Wood's declaration, he explains that the normal
3 course for performing an audit is verifying records from an outside source. (UMF
4 21) It is common practice to have direct access to general ledgers and other source
5 records when performing general liability audits and to ensure an audit's successful
6 completion. (UMF 22)

7 Accordingly, the policies clearly give Kinsale the contractual right to
8 examine the financial data that Sky High has failed to produce, despite Kinsale's
9 exhaustive efforts.

10 **C.   The Defendants Did Not Comply With Its Obligations Under The
11 Insurance Policies**

12 To successfully prove a breach of contract claim Kinsale must show the
13 following elements: (1) existence of a contract; (2) performance by the plaintiff or
14 excuse for non-performance; (3) breach by the defendant; and (4) damages. *See,*
15 *First Commercial Mortgage Co. v. Reece*, 89 Cal.App.4th 731, 745 (2001);
16 *Reichert v. General Ins. Co. of America*, 68 Cal.2d 822, 830 (1968).

17 The Kinsale policies plainly state that the defendants' premiums were only a
18 deposit and subject to change as a result of an audit or examination performed by
19 Kinsale. As cases such as *Tran* and *Purze, supra* illustrate, blocking direct access
20 to source records is a breach of the policy. As a result, Kinsale cannot correctly
21 calculate, assess and collect additional premium.

22 Kinsale is entitled to specific performance of the audit requirements and
23 ultimately an award of damages equal to the uncollected premium owed as will be
24 demonstrated through said records.[2]

25 **D.   DECLARATORY RELIEF IS APPROPRIATE**

---

[2] The damage award is not the subject of this motion. Plaintiff seeks a ruling of breach of contract as a matter of law and an order of specific performance requiring Defendants to account in conformity with the policy.

The fundamental basis of declaratory relief is the existence of an actual present controversy over a proper subject. 28 U.S.C. §2201. In the case at hand, an actual present controversy exists. Kinsale contends that Sky High has failed to fulfill its contractual obligations, while Sky High denies this allegation.

For these reasons, Kinsale is entitled to declaratory relief as a matter of law.

## VI.    CONCLUSION

For all of the foregoing reasons, Plaintiff, Kinsale Insurance Company, respectfully requests that this Court grant its motion for summary judgment, or in the alternative, summary adjudication of all of the claims stated in its Complaint For Declaratory Relief And Breach of Contract.  Kinsale seeks findings and an order that, as a matter of law: 1) Kinsale is entitled to an accounting based on original source books and records under the Sky High Policies as a matter of law; 2) That the information provided to date by defendants has been inadequate, fails to satisfy the terms of the policy, and, as such, the Defendants are liable for breach of contract; and, 3) That defendants specifically perform the audit provisions of the Kinsale polices and provide such original records as will be necessary to establish premium based on Gross Sales.

DATED:   March _4, 2015                    HINSHAW & CULBERTSON LLP


By: */s/ Cristina L. Piechocki*
ROBERT J. ROMERO
EDWARD F. DONOHUE
CRISTINA L. PIECHOCKI
Attorneys for Plaintiff KINSALE INSURANCE COMPANY