UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINSALE INSURANCE COMPANY, an Arkansas corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>SKY HIGH SPORTS LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS CONCORD LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS NASHVILLE LLC, a Nevada and Tennessee Limited Liability Company, SKY HIGH SPORTS ONTARIO LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS OPPORTUNITIES LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS ORANGE COUNTY LLC, a California and Nevada Limited liability Company, SKY HIGH SPORTS SACRAMENTO LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS SANTA CLARA LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS SEATTLE LLC, a Nevada and Washington Limited Liability Company, and DOES 1-20 inclusive,<br><br>    Defendants. | No. 2:14-cv-02086-GEB-DAD<br><br>**ORDER GRANTING PLAINTIFF'S SUMMARY ADJUDICATION MOTION** |

       Plaintiff moves for summary judgment, or in the alternative, summary adjudication, under Federal Rule of Civil Procedure ("Rule") 56 on the liability issues in its Complaint.

1

Plaintiff's Complaint comprises declaratory relief and breach of contract claims against each Defendant. Plaintiff argues in its motion:

> [Defendants] breached the audit provisions of the commercial general liability [insurance] policies issued by [Plaintiff] . . . . [since Defendants] ha[ve] failed to provide [Plaintiff's] auditors the necessary access to original financial records needed to calculate [the] final premium [owed to Plaintiff] as stipulated in each of the policies issued to [Defendants].
>
> By this motion, [Plaintiff] seeks . . . summary adjudication on its claims for [d]eclaratory [r]elief [a]nd [b]reach of [c]ontract and for a judicial declaration . . . that the defendants have breached the policies by failing to provide original books and records for inspection pursuant to the premium audit provisions of the . . . [p]olicies; and, that defendants comply with the . . . [p]olicies and provide original books and records for inspection pursuant to premium audit provisions of said policies.

(Mem. P. & A. Supp. Mot. Summ. J. ("Mot.") 2:7-19, ECF No. 11-1.)

Defendants oppose the motion with mere argument and unsupported conclusory assertions.

## I. LEGAL STANDARD

> A party is entitled to summary judgment if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' . . . The moving party has the burden of establishing the absence of a genuine dispute of material fact.

City of Pomona v. SQM North Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "A fact is 'material' when . . . it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th

2

1    Cir. 2003) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.
2    242, 248 (1986)). "A[] [dispute] of material fact is 'genuine'
3    when 'the evidence is such that a reasonable jury could return a
4    verdict for the nonmoving party.'" <u>Anderson</u>, 477 U.S. at 248.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

10   Fed. R. Civ. P. 56(c)(1)(A)-(B).

11   Local Rule 260(b) prescribes:

> Any party opposing a motion for summary judgment . . . [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

18   If the nonmovant does not "specifically . . .
19   [controvert duly supported] facts identified in the [movant's]
20   statement of undisputed facts," the nonmovant "is deemed to have
21   admitted the validity of the facts contained in the [movant's]
22   statement." <u>Beard v. Banks</u>, 548 U.S. 521, 527 (2006).

23   Because a district court has no independent duty "to
24   scour the record in search of a genuine issue of triable fact,"
25   and may "rely on the nonmoving party to identify with reasonable
26   particularity the evidence that precludes summary judgment,"
27   . . . the district court . . . [is] under no obligation to
28   undertake a cumbersome review of the record on the [nonmoving

3

party's] behalf. Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)).

## II. UNCONTROVERTED FACTS

The following uncontroverted facts concern the motion. Plaintiff insured Defendants "through September 2013 pursuant to five insurance policies." (Defs.' Response to Pl.'s Undisputed Material Facts ("SUF") No. 1, ECF No. 12-1.) "Under the terms of each insurance policy, [Plaintiff is] contractually entitled to perform an audit of [each Defendant's] books and records to assess the correct final premium for the insurance coverage provided." (Id. No. 2.) "[Plaintiff] retained a professional insurance audit firm[] . . . to perform the audits mandated by the [insurance] policies." (Id. No. 3.) "[T]he [insurance] policies provide a right to 'examine [each Defendant's] books and records.'" (Id. No. 4.) "Direct access to such original records is essential under the premium calculation provisions of said policies . . . ." (Id. No. 5.) "The 'Basis of Premium' Endorsement No. ADF4002 0110 (the 'Basis of Premium Endorsement') provides a formula for calculating 'Gross Sales' as defined in that endorsement and specified in the 'Classification and Premium' Section of the declaration pages of each policy." (Id. No. 6.) The "[f]inal premium due under each policy is derived by multiplying a rate into said Gross Sales figure." (Id. No. 7.) Plaintiff's "auditor requested direct access to the general ledgers and other source records of [each Defendant] for the annual audit needed to calculate [the] final premium and also verify that individual revenue entries were accurate." (Id. No.

4

10.) "The general financial statements provided by [Defendants] were mere summaries with gross figures which did not delineate the line-by-line entries from which said totals were derived." (Id. No. 11.) "As such, they were wholly inadequate to calculate the 'Gross Sales' of the respective policies, and to verify the accuracy of the amount and characterization of individual revenue entries of general ledgers and similar source accounting records." (Id. No. 12.)

### III. DISCUSSION

Plaintiff argues Defendants "did not provide access to ordinary general ledgers or source records . . . . Instead, [Defendants] repeatedly provided [Plaintiff with] secondary records primarily consisting of Profit and Loss Statements, with revenue summaries presumably based on general ledgers and other source records that were never provided to [Plaintiff's auditor]." (Mot. 4:18-22.) Plaintiff's auditor avers:

> [he requested] direct access to the general ledgers of [Defendants] for the annual audit period as well as access to the source records needed to verify that individual revenue entries were accurate . . . . However, the complete documentation requested, and necessary to complete the audits, were never provided. Instead . . . . [Defendants] provided records with . . . secondary summaries of revenues. These secondary records were not the genuine and complete internal day-to-day, weekly and monthly accounting books and records of the [Defendants] but summaries purportedly derived from and prepared based on [Defendants'] . . . internal records . . . . These secondary records included profit and loss statements and tax returns. I was never provided general ledgers setting forth complete revenue figures nor any other source records on revenues.

5

(Decl. Gaylord Wood Supp. Mot. Summ. J. ¶¶ 4, 6-7, ECF No. 11-4.)

Defendants rejoin: Plaintiff "seeks the original books and records of separate and independent companies[] that [Plaintiff] does not insure." (Opp'n 2:9-10.) Defendants' "Managing Member" avers in his declaration submitted in support of Defendants' position:

> Defendants[] are owners of trampoline equipment, trampoline structures, and recreational devices . . . . In exchange for a fixed monthly fee, the [Defendants] provide trampoline equipment[,] . . . structures . . . and recreational devices to separate and independent companies to provide trampoline related, recreational services to the public. These separate and independent companies[] are responsible for their own operations[] and maintaining their own business and financial records for those operations.

(Decl. of Rolland Weddell Supp. Opp'n to Mot. Summ. J. ¶¶ 4-7, ECF No. 12.)

Plaintiff replies:

> [Defendants'] . . . opposition tries to confuse the straightforward issue presented, and rewrite the commercial general liability insurance contracts [Plaintiff] provided th[ese] 'trampoline center[]' business[es]. Now, for the first time, [Defendants] contend[] that [they] merely leased trampolines . . . . [Defendants'] contention [that they lease trampoline equipment] . . . is defied by . . . the extensive underwriting history [for the insurance policies] and common sense. [Each Defendant] asked for and received commercial *general liability coverage* for its trampoline business.
>
> . . . .
>
> [Defendants] cannot now attempt to recast [their] business as a mere leasing agent to avoid providing the documents needed to complete the audit.

6

(Pl.'s Reply Supp. Mot. Summ. J. ("Reply") 2:2-6, 8:10-11 ECF No. 13) (emphasis in original).

Plaintiff's evidence establishes that each Defendant operates a trampoline center or centers, and this evidence includes averments from its Senior Vice President, who avers that Defendants described themselves in applications for insurance coverage as "trampoline centers," "trampoline fitness centers," a "trampoline and fitness center," and a "[t]rampoline [f]amily entertainment center." (Decl. of Stuart Samuel Supp. Mot. Summ. J. ¶¶ 3-7 Exs. A-E, ECF No. 11-5.)

Plaintiff has established that each Defendant breached the audit provision of the commercial general liability insurance policy issued by Plaintiff by its failure to provide Plaintiff's auditors the necessary access to original financial records needed to calculate the final premium owed to Plaintiff. However, Plaintiff has not shown it is entitled to declaratory relief since Plaintiff prevails on its summary adjudication of its breach of contract claim.

> Declaratory relief is appropriate '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' The circumstances of the present case [have not been shown to satisfy] these criteria.

Guerra v. Sutton, 783 F.2d 1371, 1376 (9th Cir. 1984) (citing Bilbrey by Bilbrey v. Brown, 738 F.2d 1462, 1470 (9th Cir. 1984)). "Adjudication of [Plaintiff's] breach of contract claim [in Plaintiff's favor] . . . render[s] the request for declaratory judgment moot or redundant . . . ." Amerisure Mut.

7

Ins. Co. v. Maschmeyer Landscapers, Inc., No. 4:06-cv-1308, 2007 WL 2811080 at *2 (E.D. Mo. Sept. 24, 2007).

For the stated reasons, Plaintiff prevails on the liability portion of its breach of contract claim.

Dated:  August 25, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge