ROBERT J. ROMERO (SBN 136539)
EDWARD F. DONOHUE (SBN 112730)
HINSHAW & CULBERTSON, LLP
One California Street, 18th Floor
San Francisco, CA 94111
Telephone: (415) 362-6000 / Facsimile: (415) 834-9070
rromero@hinshawlaw.com
edonohue@hinshawlaw.com

Attorneys for Plaintiff  Kinsale Insurance Company

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINSALE INSURANCE COMPANY, an Arkansas corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SKY HIGH SPORTS CONCORD LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS NASHVILLE LLC, a Nevada and Tennessee Limited Liability Company, SKY HIGH SPORTS ONTARIO LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS OPPORTUNITIES LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS SACRAMENTO LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS SANTA CLARA LLC, a California and Nevada Limited Liability Company,<br><br>Defendants. | Case No. 2:14-cv-02086-MCE<br><br>**REPLY MEMORANDUM IN OPPOSITION TO DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION BY PLAINTIFF KINSALE INSURANCE COMPANY AS TO LIABILITY AND DAMAGES ON CLAIM FOR BREACH OF CONTRACT**<br><br>DATE:   October 20, 2016<br>TIME:    2:00 p.m.<br>DEPT.:   Courtroom 7, 14th Floor<br>Hon. Morrison C. England, Jr.<br><br>First Amended Complaint<br>   Filed:  May 23, 2016 |

# **TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
|   | A. The Right to Copyright Royalty Requires Proof Of A Copyright | 2 |
|   | B. A Royalty Agreement Is Needed To Qualify A Payment As A Copyright Royalty | 5 |
|   | C. Defendants' Effort To Change The 2011-2012 Policy Is Futile | 6 |
|   |    1. There Is No Evidence Supporting Reformation | 8 |
|   |    2. Opportunities Is Judicially And Collaterally Estopped From Challenging The Premium Calculations | 9 |
| III. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
 9 Cal.4th 362 (1994) ................................................................................................. 5

*Apple Computer, Inc. v. Microsoft Corp.*,
 759 F.Supp. 1444 (N.D. Cal. 1991) .......................................................................... 5

*Asunto v. Shoup*,
 132 F.Supp.2d 445 (E.D. La. 2000) ......................................................................... 5

*Matter of Beverly Hills Bancorp*,
 649 F.2d 1329 (9th Cir. 1981) .................................................................................. 8

*Carter v. Goodman Group Music Publishers*,
 848 F.Supp. 438 (S.D. N.Y. 1994) ........................................................................... 5

*Gillis v. Sun Ins. Office, Ltd.*,
 238 Cal.App.2d 408 (1965) ...................................................................................... 9

*Hamilton v. State Farm Fire & Cas. Co.*,
 270 F.3d 778 (9th Cir. 2001) .................................................................................... 9

*Inamed Corp. v. Medmarc Cas. Ins. Co.*,
 258 F.Supp.2d 1117 (C.D. Cal. 2002) ...................................................................... 8

*Kaufman v. Unum Life Ins. Co. of America*,
 834 F.Supp.2d 1186 (D. Nev. 2011) ........................................................................ 8

*Kepner-Tregoe, Inc. v. Leadership Software, Inc.*,
 12 F.3d 527 (5th Cir. 1994) ...................................................................................... 4

*Practice Management Information Corp. v. American Medical Ass'n*,
 121 F.3d 516 (9th Cir. 1997) .................................................................................... 5

*Safeco Ins. Co. of America v. Robert S.*,
 26 Cal.4th 758 (2001) ............................................................................................... 8

*Sedona Corp. v. Open Solutions, Inc.*,
 646 F.Supp.2d 262 (D. Conn. 2009) ........................................................................ 5

*Shoptalk Ltd. v. Concorde-New Horizons Corp.*,
  168 F.3d 586 (2d Cir. 1999) ....................................................................................... 4

*Spinelli v. National Football League*,
  96 F.Supp.3d 81, 133 (S.D. N.Y. 2015) ..................................................................... 5

*Stephan v. Unam Life Insurance Co. of America*,
  697 F.3d 917 (9th Cir. 2012) ...................................................................................... 3

*Tomaselli v. Transamerica Ins. Co.*,
  25 Cal.App.4th 1269 (1994) ....................................................................................... 8

*Vantress Farms, Inc. v. Sydenstricker*,
  11 Cal.App.3d 943 (1970) .......................................................................................... 9

*Wrench, LLC v. Taco Bell Corp.*,
  256 F.3d 446 (6th Cir. 2001) ...................................................................................... 5

**Statutes**

17 U.S.C.
  § 102(a) ....................................................................................................................... 4
  § 102(b) ....................................................................................................................... 4

Cal. Code Civ. Pro.
  § 1858 .......................................................................................................................... 8

**Rules**

Fed. R. Evid.,
  Rule 8(c) ...................................................................................................................... 8

**Other Authorities**

*Nimmer on Copyright*
  § 1.01[B][1][a][i] (2015) ............................................................................................ 5

## I. INTRODUCTION

This is a collection action seeking recovery of thoroughly documented and authenticated amounts due for unpaid deductibles and premium. In their Opposition to the Motion for Summary Adjudication of Kinsale Insurance Company ("Kinsale") Defendants do not dispute their liability for $96,411.76 in unpaid deductibles under the Kinsale 2011-2012 Policy and the Kinsale 2012-2013 Policy. The issue of "double counting" has also gone by the board with the bankruptcy of Sky High Sports, LLC.

Instead, Defendants argue that the revenue of the franchising company Sky High Sports Opportunities, LLC ("Opportunities") should have been excluded from the premium audit for two reasons:

1. The royalties received by Opportunities, though specifically stipulated with franchisees to be royalties derived from gross sales, were allegedly copyright royalties;

2. The Declarations page of the 2011-2012 Policy is incorrect and allegedly should essentially be re-written and reformed at this late date so as to exempt Opportunities' gross sales from the final premium figure.

Both arguments are completely futile. First, there is no affirmative evidence that Opportunities either possesses any identified intellectual property that could be subject to copyright protection and/or that it owns any copyrights. Without this foundation there is no foundation that it could have granted franchisees copyright licenses which provided for royalty income.

Assuming that Opportunities both owned some copyright and allowed a franchisee to use said copyrighted material, that still would not suffice to show that its percentage share in franchise gross revenues constituted copyright royalties. Copyright royalty rights must be established by contract. Allowing another business to use copyrighted material, standing alone, does not create a royalty agreement. The Franchise Agreements plainly tie royalties exclusively to the gross sales of each

1

REPLY MEMO IN OPPOSITION TO DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION - Case No. 2:14-CV-02086-MCE

franchised trampoline center. There is no evidence of any additional agreements to pay copyright royalties.

The second argument is an equally weak footing. Opportunities has failed to plead and or provide evidence necessary to seek reformation of the 2011-2012 Policy at this late date. Moreover, the argument rests on sham declarations of witnesses not qualified to testify on this belated argument that premium was not properly calculated. The Defendants expressly admitted in papers submitted on the first summary judgment that premium was to be calculated on the gross sales formula specified in both the 2011-2012 Policy and the 2012-2013 Policy. (Samuels Dec. ¶3, Exs A and B, Commercial General Liability Declarations, CAS1001 0110 and Basis of Premium Endorsement, Form ADF4002 0110.) Judge Burrell relied on that fundamental foundational fact in ordering that the premium audit proceed pursuant to calculate gross sales. Opportunities is judicially estopped from making this self-contradictory argument.

## II. ARGUMENT

### A. The Right to Copyright Royalty Requires Proof Of A Copyright

As noted, the standard Opportunities Franchise Agreement, which was also reviewed by Kinsale's auditor in supporting her declaration, plainly states royalty income is based on the franchisees' gross sales:

> 2.2. <u>Royalty to Sky High Sports</u>. Starting on the first day that Franchisee's Business opens to the public (the "Opening Date"), and for the term of this Agreement, Franchisee shall owe to Sky High Sports a royalty of 8% of Franchisee's Gross Revenues, (the "Royalty") except that said royalty fees shall be reduced to 6% (six percent) for any month that gross sales do not total at least $200,000.00. Franchisee will pay the Royalty to Sky High Sports on the 15th day of each month on Gross Revenues of the prior calendar month.

Declaration of Jerry Raymond ("J. Raymond Dec.") ¶6, Ex. B, ¶2.2, p. 8, Amended Errata Payer Dec., Ex. 9, Dkt. 47, ¶11.b, Exs. 8 and 9; Franchise Disclosure Document pp. 3-4; Franchise Agreement, Article 2, pp. 3-4. As Payer also verified Opportunities booked the royalties in its financial statements

as equal to a percentage of gross sales from franchised operations and there were no additional line items for copyright or patent royalties. *Id.* at ¶7, Ex. 6, Payer Dec., Dkt. 47.

Opportunities relies on a bare reference to otherwise unidentified "Sky High Sports copyrighted material" in the second recital of the Standard Franchise Agreement reviewed by Payer in her Declaration and attached as Exhibit B to the Jerry Raymond Declaration to argue that all amounts derived from gross revenue were actually copyright royalty income. That bare recital constitutes zero proof that Opportunities actually held any copyrights, registered or otherwise.

Opportunities has identified no copyrighted materials that it purportedly licensed to Franchisees. Rather, the "Grant of License" in the Franchise Agreement (Article 1, Section 1.1) specifically grants a license to (i) "operate the Business in the location or area described in Exhibit 1; and (ii) the right and sublicense to use the Marks solely in connection with the operation of the business and the provision of services to Franchisee's customers." *See* J. Raymond Dec. ¶4, pp. 14-21 Ex. B at 1. In fact, *nowhere* in the entirety of Article 1 ("THE LICENSE") are copyrighted materials identified. Tellingly, the "Grant of License" specifically mentions "Marks" being contained within the license, which are then detailed in Section 1.2, "Use of Marks" of Exhibit B of the Jerry Raymond Declaration. *Id.* The purported copyrighted materials receive no such treatment.

Material subject to "copyright" protection has a limited and specific definition under the law. The parties are deemed to contract with reference to existing law and statutes. *Stephan v. Unam Life Insurance Co. of America*, 697 F.3d 917, 927 (9th Cir. 2012). Nothing described as conveyed in the Franchise Agreement remotely satisfies the standard statutory definition of a copyrighted literary or other work of art.

> Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

3

REPLY MEMO IN OPPOSITION TO DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION - Case No. 2:14-CV-02086-MCE

> (1) literary works;
> (2) musical works, including any accompanying words;
> (3) dramatic works, including any accompanying music;
> (4) pantomimes and choreographic works;
> (5) pictorial, graphic, and sculptural works;
> (6) motion pictures and other audiovisual works;
> (7) sound recordings; and
> (8) architectural works.

17 U.S.C. Section 102(a).

As noted above, Opportunities identifies no such material in Article 1, "THE LICENSE."  The Franchise Agreement "RECITALS" state that Sky High Sports has developed a business concept and plan, the distinguishing characteristics of which

> include, but are not limited to (a) certain policies, procedures, design strategies, and techniques designed to enable such businesses to operate and perform effectively; and (b) the common use and promotion of the Marks and Sky High Sports' copyrighted material, trade dress, trade secrets, and management training programs.

J. Raymond Dec. ¶4, Ex. B at 1.  While section (b) pays lip service to copyrighted material, again no such works are identified nor authenticated separately to exist in either of the Raymond Declarations.  There can be no valid royalty agreement without proof of a valid copyright.  *Shoptalk Ltd. v. Concorde-New Horizons Corp.*, 168 F.3d 586, 589 (2d Cir. 1999).

Furthermore, the concepts described in section (a) are not subject to copyright protection.  17 U.S.C. section 102(b) states "[i]n no case does copyright protection for an original work of authorship extend to any *idea*, *procedure*, *process*, *system*, *method of operation*, *concept*, *principle*, or discovery . . ." (emphasis added);  *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 (5th Cir. 1994) ("[N]o author may copyright facts or ideas. The copyright is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality." citing *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547 (1985).   The concepts in section (a) are intangible ideas, processes, and methods of operation, which are clearly not subject to copyright protection.  Thus, none of the rights conveyed in the Standard Opportunities Franchise Agreement could be subject to copyright protection.

### B. A Royalty Agreement Is Needed To Qualify A Payment As A Copyright Royalty

Assuming *arguendo* that Opportunities had provided evidence it owned some copyrighted material, ownership alone would never suffice to prove it received and/or was entitled to receive copyright royalties. Royalty agreements are created by contract. *Nimmer on Copyright* § 1.01[B][1][a][i] (2015). Even if rights in intellectual property are granted to a licensee there is no automatic right to copyright royalties absent an express agreement to pay such a royalty. *Id.*; *Carter v. Goodman Group Music Publishers*, 848 F.Supp. 438 (S.D. N.Y. 1994) (Rights to copyrighted work may be purchased without agreement to pay royalty); *See, Asunto v. Shoup*, 132 F.Supp.2d 445, 52 (E.D. La. 2000) (Promise to pay royalty required to support contract claim for breach of royalty agreement). Absent a promise to pay a royalty, other covenants related to the use of the copyright are irrelevant and support only damages for infringement. *Wrench, LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001). Whereas a court may award damages for infringement it cannot award royalties without a royalty agreement. *Id.*

Thus, the courts recognize that copyrights may be licensed in the scope of a broader business relationship on a "non-royalty bearing" basis. *Practice Management Information Corp. v. American Medical Ass'n*, 121 F.3d 516, 519 (9th Cir. 1997); *Spinelli v. National Football League*, 96 F.Supp.3d 81, 133 (S.D. N.Y. 2015); *Sedona Corp. v. Open Solutions, Inc.*, 646 F.Supp.2d 262, 269-70 (D. Conn. 2009); *Apple Computer, Inc. v. Microsoft Corp.*, 759 F.Supp. 1444, 1447-48 (N.D. Cal. 1991). The reason this is frequently done is illustrated by cases such as *Practice Management Information Corp.*, 121 F.3d at 59, *Apple Computer, Inc.*, 759 at 1147-48 and *Advanced Micro Devices, Inc. v. Intel Corp.*, 9 Cal.4th 362, 385-86 (1994). A royalty free copyright license is common in the case of a broader joint enterprise. *Id.*

Opportunities has provided no evidence that it owned any copyrighted material and the evidence of a requisite agreement to pay copyright royalties is also absent. In

5

exchange for broad assistance in establishing the franchise and using its trademarks, Opportunities received a global *franchise royalty* based on gross revenues from the overall resulting operations. The claim that these are copyright royalties is a *post hoc* creation to avoid the clearly established premium liability.

### C. Defendants' Effort To Change The 2011-2012 Policy Is Futile

Without any foundation that they have expertise in commercial liability underwriting Ronald Raymond, as successor to former managing member Roland Weddell (R. Raymond Dec. ¶¶1, 3-6), and Jerry Raymond as current managing member of Opportunities (J. Raymond Dec. ¶¶1, 7-10, Ex. C) claim premium should have been calculated for Opportunities based on the square footage of the Carson City headquarters of the company. Notwithstanding that the Franchise Agreement covers the franchise of indoor trampoline arenas (J. Raymond Dec. ¶4, Ex. B, p. 1 Recitals) Jerry avers that Opportunities "has little or nothing to do with the operation of Amusement Centers." J. Raymond Dec. ¶7.

These are incompetent sham declarations. First, the policy excerpt attached as Exhibit C to Jerry Raymond's declaration was taken from the 2012-2013 Policy under which *Opportunities was not insured*. Samuels Dec. ¶3, pp. 22-26, Ex. B Commercial General Liability Declarations, p. 2 of 2. It includes a line item in the Basis of Premium provision which might have been used, but never was used whereby the underwriter might have chosen to calculate premium based on square footage. *Id.* The 2011-2012 Policy, under which Opportunities was insured, has no such unused line item. It plainly provides that the Basis of Premium would be calculated solely based on Gross Sales. *Id.* at Ex. A, Commercial General Liability Declarations, p. 2 of 2. Thus, this contrived argument begins by confusing provisions of the 2012-2013 Policy under which Kinsale seeks no premium from Opportunities with the 2011-2012 Policy which limits the classification and Basis for Premium to Gross Sales and has no provision for an alternate formula.

Second, the first Summary Adjudication Motion dealt with Kinsale's right to

conduct premium audits under all policies based on "Gross Sales". Order Granting Plaintiff's Summary Adjudication Motion (Dkt. 21), Supplemental Request for Judicial Notice ("SRJN") Ex. A, pp. 1:26-2:18, pp. 4:4-5:8. In opposing the motion to produce the requisite records, Defendants submitted the Declaration of former now deceased managing member Roland Weddell who admitted on behalf of all defendants that premium was calculated based on Gross Sales. Weddell Dec. ¶8, p. 1:23-27, SRJN Ex. B. As Judge Burrell detailed in his ruling, the Defendants did not dispute that the 2011-12 Policy, also authenticated in this motion was true and correct. RJN Ex. A, p. 4:5-8; UMF 12-13. The authenticity of the 2011-2012 Policy remains undisputed in the case of this motion. (Defendants' Response to Separate Statement of Undisputed Material Facts ("RUF No. II") Nos. 12 and 13, p. 6:8-28.) Judge Burrell also relied upon Defendants' concession in their original Response to Separate Statement of Undisputed Material Facts (Dkt 12-1) RJN Ex. C, ("RUF No. I") that:

> The 'Basis of Premium' Endorsement No. ADF2002 0110 (the 'Basis of Premium Endorsement') provides a formula for calculating 'Gross Sales' as defined in that endorsement and specified in the 'Classification and Premium' Section of the declaration pages of each policy. (*Id.* No. 6.) The '[f]inal premium due under each policy is derived by multiplying a rate into said Gross Sales figure." (*Id.* No. 7.)

SRJN Ex. A, p. 4:18-24; SRJN Ex. C, SRUF No. I, Nos. 6-7, pp. 3:27-4:25. Specifically all Defendants admitted:

| **7. Final Premium due under each policy is derived by multiplying a rate into said Gross Sales figure.** | As to insured, named Defendants, these facts are not disputed. |

SRJN Ex. C, pp. 4:16-24. Further, Defendants conceded in their Opposition Brief that premium should in fact be based on monthly income of the Defendants but asserted the financial statements needed to complete the audit had been provided. SRJN Ex. D, p. 3:10-23, Dkt 12. Notwithstanding these admissions, Opportunities now claims with five years of hindsight, that it was unfair to use a Gross Sales formula for Opportunities because most of its employees have desk jobs in Reno. Opposition, §III.C., pp. 6-7. However, the policy language controls the Basis of Premium

7

formula, as Judge Burrell has already ruled.  These sham declarations should be disregarded.

### 1. There Is No Evidence Supporting Reformation

Kinsale underwrote these closely held and related businesses as a group.  There is no foundation the Raymonds have any expertise on how classification codes are assigned in such circumstances and their declarations should be disregarded for that reason as well.  (See Accompanying Objections to Evidence §§ II, III and IV.)  Nor do they aver any knowledge of facts regarding the negotiation and insurance of the policies, inclusive of any knowledge or claim that Gross Sales formula was used by mistake.  (*Id.* at § IV.)

In any event, this court is not entitled to re-write the plain language of the 2011-2012 Policy, already adopted by Judge Burrell, under the guise of interpreting the policy.  *Safeco Ins. Co. of America v. Robert S.*, 26 Cal.4th 758, 764 (2001); Cal. Code Civ. Pro. § 1858.  A claim for reformation has never been raised in any pleading. (SRJN Exs. E and F) Fed. Rules of Evidence, Rule 8(c); *See, Kaufman v. Unum Life Ins. Co. of America*, 834 F.Supp.2d 1186, 1193 (D. Nev. 2011) (Untimely amendments not allowed without showing of excusable neglect).  Opportunities had every opportunity and reason to raise this issue on the prior closely related first summary adjudication motion.

However, such a claim would have been futile whenever raised.  First, reformation must be supported by clear and convincing evidence that language of the policy or other contract does not reflect the pre-formation agreement of both parties. *Matter of Beverly Hills Bancorp*, 649 F.2d 1329, 1333 (9th Cir. 1981); *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1287-88 (1994).  It is only available when there is no conflict in the evidence that the policy is at odds with the pre-formation agreement of the parties.  *Inamed Corp. v. Medmarc Cas. Ins. Co.*, 258 F.Supp.2d 1117, 1123 (C.D. Cal. 2002).  A court cannot reform or remake a contract where there was never a common intent to make the contract as urged by the party

8

1  seeking reformation. *Gillis v. Sun Ins. Office, Ltd.*, 238 Cal.App.2d 408, 441 (1965).
2  Here, there is no evidence that Opportunities sought to have premium calculated on a
3  square footage basis at the time it was issued nor that Kinsale agreed to that request.
4  The Raymonds only aver that a uniform basis of premium formula is now unfair with
5  hindsight. That is no evidence at all of pre-formation intent and should be
6  disregarded.

7       Moreover, as shown by the Cribbs declaration, Kinsale has already performed
8  its obligations as insurer by defending and indemnifying multiple claims and paying
9  out multiple deductibles on the faith of the contract. UMF 1-3. (Cribbs Dec. ¶¶3-8,
10  pp. 3:3-7:19, Exs. 1-20. The fact that the payments were made on behalf of the
11  Insured Defendants is not disputed. (RUF No. II, Dkt. 51-3 (10/6/15) pp. 2:1-3:6.)
12  Having accepted such policy benefits, the Defendants are legally estopped to argue for
13  reformation. *Vantress Farms, Inc. v. Sydenstricker*, 11 Cal.App.3d 943, 950-51
14  (1970).

### 2. Opportunities Is Judicially And Collaterally Estopped From Challenging The Premium Calculations

17       This self-contradictory position is also barred by judicial estoppel. *Hamilton v.
18  State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). A central tenet of the
19  first summary judgment motion was an agreement that premium was to be calculated
20  based on gross sales of each insured. After Judge Burrell resolved the dispute as to
21  how the premium audit should be conducted and ordered the Defendants to produce
22  the original records documenting Gross Sales, Kinsale completed the audit. At this
23  late date, Opportunities now claims the wrong records and measures were consulted.
24  Kinsale also expended considerable expense filing this motion on the faith of that
25  undisputed fact. This highly prejudicial change of position is both factually
26  unsupported and a classic example of playing "fast and loose" with a litigant's legal
27  position for improper expedient reasons.

28

9

REPLY MEMO IN OPPOSITION TO DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY
ADJUDICATION - Case No. 2:14-CV-02086-MCE

## III. CONCLUSION

Defendants have raised no legitimate defenses or triable issues of fact. Summary judgment should be granted for the full amounts sought as follows:

  Ownership Companies  $873,783.76

  Opportunities  $496,818.76

Date: October 13, 2016  HINSHAW & CULBERTSON LLP

*/s/ Edward F. Donohue*

ROBERT J. ROMERO
EDWARD F. DONOHUE
Attorneys for Plaintiff
Kinsale Insurance Company

3522200v1  955912