UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINSALE INSURANCE COMPANY, an Arkansas corporation,<br><br>Plaintiff,<br><br>v.<br><br>SKY HIGH SPORTS CONCORD LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS NASHVILLE LLC, a Nevada and Tennessee Limited Liability Company, SKY HIGH SPORTS ONTARIO LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS OPPORTUNITIES LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS SACRAMENTO LLC, a California and Nevada Limited Liability Company, SKY HIGH SPORTS SANTA CLARA LLC, a California and Nevada Limited Liability Company,<br><br>Defendants. | No. 2:14-cv-02086-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

In bringing this lawsuit, Kinsale Insurance Company ("Plaintiff") seeks redress from Sky High Sports Opportunities LLC ("Opportunities") and three Sky High Sports franchisees: Sky High Sports Santa Clara LLC, Sky High Sports Sacramento LLC, and

1

Sky High Sports Concord LLC ("Ownership Companies"), (collectively "Defendants").[1] FAC, ECF No. 35, at 1:24–2:5. Presently before the Court is Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), which is premised on the contention that Plaintiff is entitled to recover unpaid insurance premiums and unreimbursed deductibles from Defendants. Pl.'s Mot., ECF No. 37; Pl.'s P & A Mot., ECF No. 37-1, at 3:14–18. Defendants filed an Opposition to Plaintiff's Motion, to which Plaintiff submitted a Reply. Defs.' Opp., ECF No. 51; Pl.'s Reply, ECF No. 53.

For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiff's Motion, ECF No. 37.[2]

**BACKGROUND**

Defendants franchise and/or operate amusement centers with trampolines, foam pits, and snack bars at various locations across the United States. FAC ¶ 13. Plaintiff is an Arkansas corporation that provides, inter alia, commercial general liability insurance. Id. at ¶ 1.

Most of the facts surrounding the present action are undisputed by the parties. Defs.' Opp. at 3:5–8; SUMF, ECF No. 53-2.[3] Plaintiff issued five total commercial general liability insurance policies ("Insurance Contracts") to various Sky High entities between November 2, 2011 and September 21, 2013. Pl.'s P & A Mot. at 4:15–5:12;

---

[1] In its First Amended Complaint ("FAC"), Plaintiff named additional Sky High Sports defendants, including Sky High Sports Nashville LLC and Sky High Sports Ontario LLC. FAC at 1. However, Plaintiff now concedes that those additional defendants do not owe any insurance premiums or deductibles under the insurance contracts disputed here. Pl.'s P & A Mot., ECF No. 37-1, at 2:12–18. According to Plaintiff, it therefore intends to seek a Stipulation to Dismiss these named-Defendants from the present action. Pl.'s P & A Mot. at 5:23–6:3.

[2] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

[3] Plaintiff filed a Statement of Undisputed Material Facts ("SUMF"), (Pl.'s SUMF, ECF No. 37-2), to which Defendants filed a Response, (Defs.' Resp. Pl.'s SUMF, ECF No. 51-3), and Plaintiff filed a Reply. Defs.' Reply SUMF, ECF No. 53-2. Where the facts are disputed, the Court considers Defendants' version of the facts, as it must on a motion for summary judgment. However, the Court primarily refers to Plaintiff's Reply.

SUMF ¶ 13.  Only two of these Insurance Contracts are at issue here: (1) the September 21, 2011 to September 21, 2012 Insurance Contract issued to Ownership Companies and Opportunities; and (2) the September 21, 2012 to September 21, 2013 Insurance Contract issued to Ownership Companies.  FAC ¶ 14.  Pursuant to the Insurance Contracts, Plaintiff was entitled to advance amounts within the applicable $25,000 deductible threshold to satisfy insurance claims, and then seek reimbursement for these deductible payments from Defendants.  Id. at ¶¶ 20, 22; SUMF ¶¶ 1, 24.  Additionally, at the time the policies were issued, Defendants paid an insurance premium deposit, with the agreement that the final premium owed would be adjusted based on Defendants' gross sales figures.  Pl.'s P & A Mot. at 7:19–27, 10:22–11:1; SUMF ¶ 54.

To determine the final premium, Plaintiff was entitled to perform an audit of Defendants' finances at the end of each policy term.  FAC ¶ 15; SUMF ¶¶ 17, 54.  A dispute arose when Defendants refused to provide Plaintiff original financial ledgers after the coverage periods of the Insurance Contracts ended.  FAC ¶ 16.  This prevented Plaintiff from calculating Defendants' gross sales for the purpose of determining the insurance premiums owed.  Id.  Plaintiff filed a Complaint against Defendants on September 9, 2014, claiming that Defendants' actions were in breach of the audit provisions of the Insurance Contracts.  FAC ¶ 17; Compl., ECF No. 1.  Plaintiff subsequently filed a motion for summary judgment on the basis of that breach, (ECF No. 11), which the Court granted in part, by ordering an audit of Defendants' finances as stipulated in the Insurance Contracts.  FAC ¶ 17; 2015 Order, ECF No. 21.  Plaintiff's auditor commenced that audit in September of 2015, and concluded the following: (1) Ownership Companies owe $777,372.00 in final premiums and $96,211.76 in unreimbursed deductibles; and (2) Opportunities owes $350,376.00 in final premiums and $69,822.76 in unreimbursed deductibles.  FAC ¶ 18; Pl.'s Am. Mot., ECF No. 39, at 2:4–20.

By way of this lawsuit Plaintiff seeks to recover those final premiums and unreimbursed deductibles as identified by the audit.  FAC ¶ 19–20.  Plaintiff filed the

present Motion on June 21, 2016, asking that this Court find as a matter of law that Defendants are liable in accordance with the audit's findings. Pl.'s P & A Mot. at 20:18–21. Defendants filed an Opposition, conceding that Plaintiff is owed reimbursement for the deductible payments, but challenging the amount owed for insurance premiums. Defs.' Opp. at 2:2–7, 3:18–6:11.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith

4

Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

Plaintiff brings four causes of action against Defendants: (1) Breach of Contract, based on the alleged failure to pay deductibles and premiums pursuant to the Insurance Contracts; (2) Money Due for Unpaid Insurance Premiums, seeking payment of interest at a rate of 10% per annum for the aggregate debt of the unpaid insurance premiums; (3) Open Book Account, seeking reimbursement of deductibles paid by Plaintiff on Defendants' behalf; and (4) Money Had and Received ("Quantum Valebant"), seeking payment of interest at a rate of 10% per annum for the unreimbursed deductibles owed to Plaintiff by Defendants. FAC at 8:18–10:16.

Defendants raise only two contentions in opposition to Plaintiff's Motion. Defs.' Opp. at 3:21–23. First, Defendants contend that including franchise fee payments ("Royalties") in Opportunities' gross sales calculations for the purpose of determining insurance premiums was improper, as these Royalties should have been excluded from gross sales figures pursuant to the plain language of the Insurance Contracts. Defs.' Opp. 4:1–5. Second, Defendants contend that the classification of Opportunities as an "Amusement Center" within the relevant Insurance Contract should be amended since it is incorrect and has resulted in inflated premium calculations. Defs.' Opp. at 2:18–3:3, 5:18–21.

Defendants' two contentions each concern only the amount owed by Opportunities in unpaid insurance premiums. Defendants concede that Plaintiff is entitled to judgment with regard to the unreimbursed deductible payments. Defs.' Opp. at 3:21–23. Defendants also do not contend that the Ownership Companies received Royalties, or that the Ownership Companies were incorrectly classified as "Amusement

Centers" within the applicable Insurance Contracts. Therefore, the Court GRANTS Plaintiff's Motion with regard to culpability for unreimbursed deductibles owed by Defendants, and further finds Ownership Companies liable for unpaid insurance premium payments under the Insurance Contracts.

The issues remaining are as follows: (1) whether the Royalties received by Opportunities were derived from "patent rights or copyrights" such that they should be excluded from its gross sales figures; and (2) whether Opportunities was improperly classified as an "Amusement Center" in the 2011–2012 Insurance Contract, such that the contract should not be enforced as written. The Court answers both questions in the negative. As set forth below, it determines that franchise fee payments received by Opportunities were properly included in its gross sales figures, and further finds that Defendants have offered no evidence that would justify reformation of the 2011–2012 Insurance Contract.

### A. Opportunities' "Royalty Fee" Income Is Not Derived From Copyrighted Material, And Thus Is Properly Included In Its Gross Sales Figures

The Insurance Contracts define "Gross Sales" to exclude, in relevant part, "Royalty income from patent rights or copyrights which are not product sales . . . ." SUMF ¶ 21. Opportunities argues that as a franchisor, it grants licenses to franchisees permitting the use of its proprietary property, including, but not limited to, policies, procedures, marks trade dress, trade secrets, and management training programs. Defs.' Opp. at 4:9–5:4. Use of this license, Opportunities contends, subjects the franchisee to a "Royalty" fee based off a percentage of the franchisee's gross revenue. Defs.' Opp. at 5:5–17. As "license" Royalty payments, Opportunities argues that this revenue stream does not constitute "product sales" for the purpose of determining gross sales. Defs.' Opp. at 5:5–17.

Plaintiff contends that Defendants rely on bare references to unidentified copyrighted materials, and that Opportunities has identified no copyrighted materials that it purportedly licensed to franchisees. Pl.'s Reply at 3:4–20. The Court agrees.

Copyright protection does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Defendants have failed to provide any evidence that "Royalties" paid by the Ownership Companies were derived from "original works of authorship" which include "(1) literary works; (2) musical works, including any accompanying words; (3) dramatic works, including any accompanying music; (4) pantomimes and choreographic works; (5) pictorial, graphic, and sculptural works; (6) motion pictures and other audiovisual works; (7) sound recordings; and (8) architectural works." 17 U.S.C. § 102(a). While Defendants may have described the franchisee's fee payments as "Royalties" in its franchise agreements, such a description does not confer copyright status upon this source of income without evidence of copyrighted material, which the record does not contain.

Therefore, the Court finds that inclusion of the franchise fee payments received by Opportunities was properly included in the calculations of gross sales for the purpose of determining the amount of insurance premiums owed under the 2011–2012 Insurance Contract.

**B.     Reformation Of The 2011–2012 Insurance Contract Is Not Warranted**

Defendants' second argument in opposing Plaintiff's Motion rests on a contention that the Declarations Page of Opportunities' 2011-12 policy should, in essence, be rewritten so as to exempt Opportunities from a gross sales calculation of its final premium owed, and instead calculate Opportunities' premium based on the square footage of its Nevada headquarters building. Specifically, Defendants urge the Court to change the classification code for Opportunities' policy from one applicable "Amusement Centers" (under Class Code 10015.01) to a "Buildings or Premises—Office—premises occupied by employees of the insured" classification pursuant to Class Code 61224.01. That argument, however, is not well taken.

///

Defendants' contention that the policy's classification is incorrect amounts to a request for reformation of the insurance contract. To support that contention, Defendants argue that Opportunities is a management/administration company that has nothing to do with the Sky High-branded Amusement Centers operated by the Ownership Companies. Consequently, Defendants claim that Opportunities' activities pose no insured risk or exposure to Plaintiff. They maintain that Opportunities' premium classification should be changed to a buildings and premises code that calculates premium based on square footage as opposed to a surcharge-based formula predicated on gross sales.

This Court has, however, already resolved the dispute as to how any premium due in this matter should be calculated by finding that the final premium due under each policy, including Opportunities', will be derived from the gross sales formula attaching to an Amusement Centers classification. Kinsale Ins. Co. v. Sky High Sports LLC, No. 2:14-cv-02086-GEB-DAD, 2015 U.S. Dist. LEXIS 113416, at *5 (E.D. Cal. Aug. 25, 2015). As a preliminary matter, arguing otherwise at this point would appear to be barred by collateral estoppel since the issue has already been determined. See, e.g., Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782-83 (9th Cir. 2001).[4]

Defendants fare no better even if the Court were to proceed to the merits of their reformation claim. First, no claim for reformation has been raised in any previous pleading, including Defendants' prior summary judgment motion. Moreover, in order to justify reformation, Defendants must show through clear and convincing evidence that the policy provisions in question, here the classification codes in Opportunities' Declarations Page, did not reflect the pre-formation intent of both parties. Matter of Beverly Hills Bancorp, 649 F.2d 1329, 1333 (9th Cir. 1981). A court cannot reform or remake a contract if there was never a common intent to make the agreement urged by the party seeking reformation. Gillis v. Sun Ins. Office, Ltd., 238 Cal. App. 2d 408, 414

---

[4] Given the plain language of the 2011-12 Declarations Page, Defendants are also precluded from arguing that interpreting the Opportunities policy requires that it be rewritten. See Safeco Ins. Co. of Am. v. Robert S., 26 Cal. 4th 758, 764 (2001); Cal. Code Civ P. § 1858.

9

(1965).  Here, there is no evidence that Opportunities sought, prior to issuance of Plaintiff's policy, to have its premium calculated on a square foot basis, or that Plaintiff agreed to do so.  Instead, Opportunities argues only in hindsight that any uniform premium formula based on gross sales is unfair.  That argument does not suffice to justify reformation.

### C. While Defendants Are Culpable For Breach Of Contract, The Court Cannot Determine How Much Money Is Owed Without Additional Information

While Defendants are liable for their breach of the Insurance Contracts, it remains unclear to the Court how much each Defendant allegedly owes in unpaid insurance premiums and unreimbursed deductibles.  Plaintiff's FAC provides that "Defendants" are liable to Plaintiff for $969,984.96 in unpaid deductibles and premiums.  FAC ¶ 46.  Plaintiff subsequently asserts that the Ownership Companies owe $376,965.00, and Opportunities owes $496,818.76 in unpaid premiums and deductibles.  Pl.'s P & A Mot. 20:17–21.  Thereafter, Plaintiff's Amended Motion provides that "Sky High Sports Ontario LLC, Sky High Sports Sacramento LLC, [and] Sky High Sports Santa Clara LLC" owe an aggregate sum of $873,783.73, and that Opportunities owes a total of $496,818.76.  Pl.'s Am. Mot., ECF No. 39, at 2:4–20.  Plaintiff's Amended Motion also lists Sky High Sports Ontario LLC as a liable party, (Pl.'s Am. Mot. at 2:7–10), which contradicts Plaintiff's earlier concession that the Ontario franchisee owed no premium or deductible payments.  See Pl.'s P & A Mot. at 2:13–15.  Finally, the Amended Motion additionally omits Defendant Sky High Sports Concord LLC from the list of companies that are liable for the $873,783.73 in unpaid premiums and deductibles.  Pl.'s Am. Mot. at 2:7–10.  Additionally, Plaintiff seeks prejudgment interest on the amounts owed by Defendants, but fails to address when such interest should have begun to accrue.  FAC at 8:18–10:16.  Without further clarification, the Court is unable to provide a determination of the amount owed by each Defendant, and thus is unable to grant Plaintiff's Motion in its entirety.

///

Therefore, the Court GRANTS Plaintiff's Motion with regard to Defendants' culpability, but orders the parties to schedule a prove-up hearing concerning the narrow issue of how much each Defendant is liable for in unpaid insurance premiums and deductibles under the Insurance Contracts, as well as whether any prejudgment interest is due on amounts owed.

**CONCLUSION**

For the reasons discussed, the Court GRANTS, in part, and DENIES, in part, Plaintiff's Motion for Summary Judgment, ECF No. 37. Plaintiff's Motion is GRANTED as to Defendants' liability for breach of contract arising from the failure to pay unreimbursed deductibles and insurance premiums pursuant to the Insurance Contracts. Plaintiff's motion is DENIED, without prejudice, with regard to the determination of specific amounts owed by each Defendant, and with regard to any prejudgment interest owed on those amounts, since the amounts owed remain unclear.[5]

The parties are ordered to schedule a prove-up hearing concerning the narrow issue of how much each Defendant is liable for in unpaid insurance premiums and deductibles under the Insurance Contracts, and the question of whether prejudgment interest should be awarded on any said amounts.

IT IS SO ORDERED.

Dated: May 24, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[5] Since the amounts owed by Defendants remain unclear at this time pending prove-up, any determination as to prejudgment interest on sums ultimately owed is necessarily premature and that portion of Plaintiff's Motion is denied without prejudice on that basis.

11